# United States Court of Appeals
# FOR THE SECOND CIRCUIT
Docket No. 17-1776

## D. Ct. No: 3:17CR0003 (AWT)

UNITED STATES OF AMERICA,
Appellee,

v.

David Quatrella,
Defendant-Appellant

---

### APPELLANT'S OPENING BRIEF

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

Judge Alvin V. Thompson Presiding

---

**ORAL ARGUMENT REQUESTED**: LR 34.1

_____

**ON THE BRIEF FOR MR. QUATRELLA**
**Richard A. Hamar, Esq.**
**402 West Broadway**
**Suite 400**
**San Diego, CA 92101**
**(310) 499-8767**
richardhamar@aol.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………...v

STATEMENT OF JURISDICTION………………………...x

ORAL ARGUMENT REQUESTED………………………x

CORPORATE STATEMENT……………………………….xi

NO RELATED CASES……………..……………………….xi

WORD AND FONT CERTIFICATE………………….....xii

INTRODUCTION…..……………………………………1

STANDARD OF REVIEW…..……………………………6

SUMMARY OF THE ARGUMENT………………………15

STATEMENT OF THE CASE……………………………15

STATEMENT OF THE FACTS……………………………16

ARGUMENT……………………………………………16

    A.  The waiver of the right to appeal
does not foreclose direct review……………..…………16

  1) The waiver was not knowing and voluntary…………,17

  2) An appellate waiver is a contract construed against the
    government…………………………………………18

3) Ineffective Assistance of Counsel claims can be considered
   on direct appeal…………………………………………..19

4) All necessary facts of the IAC are in the record……….20

5) The IAC claim was fully vetted and considered in the
   district court………………………………………………20

6) The Rule 35 (A) motion is independently appealable….21


   II.  This Appeal is grounded in ineffective
        assistance of counsel claims and near
        structural error………………………………….…………22

   III. The "Intended Loss" formula that drove the USSG
        calculation through the roof has no basis in law or
        fact…………………………………………………………32

   IV. The Restitution Order is procedurally
   And substantively flawed and unlawful………………35


   V.   Besides a sentence in the probation range if
        remanded, this case could attract the Court's
        Supervisory Power and result in a dismissal of
        all charges…………………………………………………39


   VI. The errors were so encompassing and fundamental
        that this criminal case suffered from Structural
        Error and must be remanded without a

finding of prejudice or harmless error; Recusal is also respectfully requested...............................43

CONCLUSION AND PRAYER FOR RELIEF..................................................................51

CERTIFICATE OF SERVICE......................................53

# TABLE OF AUTHORITIES

## A. US Supreme Court

*Hinton v. Alabama,*
134 S. Ct. 1081 (2014)…………………………………………………9

*La Buy v. Howes Leather Co.,*
352 US 247 (1957)……………………………………………………51

*Laffler v. Cooper,*
566 U.S._(2012……………………………………………………………31

*Missouri v. Frye,*
132 S. Ct. 1399 (2012)………………………………………………6,31

*Mooney v Holohan,*
294 U.S. 103 (1935)…………………………………………………43

*Strickland v. Washington,*
466 U.S.,688 (1984)……………………………………… 6 (Passim)

## B. US Circuit Court

### 1. Second Circuit

*Pham v. United States,*
317 F.3d 178 (2d Cir. 2003)………………………………………6

*Yarborough v. Keane*,
101 f.3d 894 (2nd Cir. 1998)…………………………………………..46


*U.S. v Binday*,
804 F.3d 558 (2nd Circuit 2014)……………………………24,47 (passim)


*U.S. v. Byors*,
526 F3d 222 (2d Cir. 2009)………………………………………………33

 United States v. Chen,
127 F.3d 286 (2nd Cir. 1997)…………………………………………….6,18

United States v. Goodman,
165 F.3d 169 (2nd 2008)……………………………………….............16

*United States* v. Gushlak,
728 F.3d 184, 188 (2d Cir.2013)……………………………………….8

*United States v. Parisi,*
 529 F.3d 138 (2nd Circuit 2017)……………………………………… *19*


*United States v. Ready*,
831 F.3d 551(2nd Cir. 1996)………………………………………….6,17,18


*United States v. Ritter*
1666 F.3d 144(2nd Circuit 1999);…………………………………….19

*United States v. Robie,*
1666(2nd Circuit 2017);……………………………………………….42

*United States v. Santiago,*
384 F.3d 31, (2d Cir.2004)……………………………………………7

*United States v. Uddin,*
551 F.3d 176, (2d Cir.2009)…………………………………………7


2.    Other Circuits

Reserve Mining v. Lord,
529 F.2d 761 (8th Cir. 1976)………………………………………50

*US v. Abney*

14-3074 (D.C Cir. 2016)……………………………………………33


*U.S. v. Ahidley,* 486 F.3d 1184,

(10th Cir. 2007). ……………………………………………………38


*United States v. Bazemore I,*

839  F.3d 379 (5th Cir. 2015).
…………………………………………………………………………34

*United States v. Dominguez,*

 14-10507 (9th Cir. 2016). ………………………………………34


*United States v. Jenkins,*

578 F. 3d 545 (7th cir. 2009). …………………………………34

*U.S v. Ledge*,

553 F.3d 381 (2th Cir. 2008),

certiorari denied 129 S.Ct. 2028  (2008)…………………………………39


*United States v. Olsen*,

 704 F.3d 1172 (9th Cir. 2013)……………………………………………42


*United States v. Pandielo*,

184 F.3d 682 (7th Cir. 2002)………………………………………………39


*Reserve Mining Co. v. Lord*,

529 F.2d 181, 188 (8th Cir. 1976)……………………….……………… ….45.


*U.S. Robie*,

166 F3d 144  (10th 199)…………………………………………………40


  C. US District Court


*U. S. v. Aguilera Noriega*,

831 F. Supp 1188 (C.D. CA 2013)………………………………………48


  D.Statutes

    21 USC 1291…………………………………………………………vii

18 USC 3663………………………………………………………..23 (passim)

18 USC 3664………………………………………………………37,38

18 USC 2255…………………………………………………………….(passim)

E. Rules

USSG 2B1.1……………………………………………………..22,(passim)


USSG 2T1(B)(2)…………………………………………………….23

Federal Rule Criminal Procedure 11 (B) (n)…………………………..33

Federal Rule Criminal Procedure 33…………………………………21

Federal Rule Criminal Procedure 35 (A) …………………………(passim)

Federal Rule Evidence 901………………………………………...45

Federal Rules of Appellate Procedure………………………….…52

F. Texts and Treatises

William Michell Law Rievew Vol.3, iss 1997, chpt. 5…………………..48

## JURISDICTION

This Court has jurisdiction over this timely filed direct appeal of a criminal conviction pursuant to 21 USC 1291. Alternatively, if a proper motion is filed in this matter, this court could exercise its Supervisory Power to impose sanctions to rectify the problems caused by the Government as discussed in Point V.

## ORAL ARGUMENT REQUESTED

The Appellant respectfully requests oral argument.   Oral argument will assist the panel of this Honorable Court  because the vast majority of federal bench officers and their law clerks have had no experience with this species of fraud as it is rarely prosecuted, complex and there are many novel issues such as the correct formula for "Intended Loss" not tackled by this Court in *Binday,infra*.  The United States Supreme Court has not considered a case involving this species of fraud which is explained in detail in the introduction that follows.

Additionally, this Court has rarely considered issues on direct appeal that arose in part through a full vetting of Federal Rule of Criminal Procedure 35 (a) to Vacate the Sentence.

x

Finally, oral argument will assist the panel with the intricate web of the alleged fraud on the district court as it relates to the inflated sentence. The Undersigned has substantial experience with prosecuting Governmental Misconduct and can be of great assistance at Oral Argument if this issue is considered by the Panel. For a recent example of ferreting out several hundred separate acts of Government misconduct and being awarded several sanctions: for example: See *U.S. v. Dominguez*, 14-10507 (9th Cir. 2016)(unpublished, not for precedent).

The Assistant United States Attorney must be available to stand before this Court and if requested explain a litany of irregularities introduced by the Government.

## CORPORATE STATEMENT/NO RELATED CASES

There are no related cases or conflicts of any nature. The Appellant is an individual who has no corporate connections and no connections to any entity of any type that is known to be related to this matter.

## CERTIFICATE OF WORD COUNT/FONT

I, Richard A. Hamar, upon penalty of perjury and upon firsthand knowledge certify that I used the tool in Microsoft Word to determine that there are 9,753 words in the body of this motion.

This body of The Appellant's Opening Brief uses Century Schoolbook font, size 14. I hereby certify on this 28th Day of August that the foregoing is true under penalty of perjury

_____/ss/_____

Richard A. Hamar

INTRODUCTION

This case is about a mysterious type of life insurance policy that first became available with the full blessings of the major life insurance companies in the early 2000s. These policies are different from traditional life insurance policies seen in the television commercials where an otherwise grief stricken wife has a silver lining smile while caressing her deceased husband's arm chair in front of the proverbial glowing fireplace because, "Thank God for ABC life insurance company, that will now provide all of the financial needs for me and the kids."

Stranger originated life insurance policies, or STOLI as they are known in the industry, were designed as investment vehicles for groups whose members who would contract with an insured to own same after a two year waiting period. The investors would profit by the death of the beneficiary or more likely by reselling the policy in the secondary market. The investors paid the premiums for this waiting period which meant that if the insured were to die; his family would receive a windfall, the entire benefits with no cost. Additionally if he lived past the waiting period which almost always happened, the insured would receive a percentage of the resale of the policy by the investors in the

open market.  No one lost when a STOLI policy was in play.  The face value of STOLI policies were often in the 10-15 million dollar range so ABC Insurance Company was paid handsome premiums in the range of $500,000.00 to $750,000.00 per year and as long as there was no fraud by misrepresenting of the age or health of the beneficiary, the normal actuarial would insure profits which on the surface would have been the same as the traditional family held life insurance policies

However, the life insurance brass began to squirm as these policies did not fit their warm and fuzzy sales image and given that the beneficiaries were wealthier, the numbers in this emerging market were less accounted for in the actuarial data.  As a result, the life insurance companies at least wanted to know if the application was for a STOLI policy and thus began a simple box checking system on life insurance applications to determine if the policies were to be resold.

Given the new challenges of these applications, agents, brokers and attorneys began maneuvers similar to seeking IRS deductions, to continue enjoying the STOLI profits. Therein lies the rub for federal courts nationwide.  What is fraud if health and age of the beneficiaries were not misrepresented?  What were the losses when the life

2

insurance companies, beneficiaries and investors all made profits? And should these policies be malum prohibitum like your kilo of cocaine? In actuality these type of policies were such a tiny amount of the industry and there were so few cases that the federal courts including this venerable Circuit, have provided some but not all of the answers. They are not malum prohibitum. They are unlawful when misrepresenting the intent to resell despite profits all around because of a theory that the life insurance industry has the right to control how it conducts business. But the United States Sentencing guideline (Hereafter USSG) loss calculation when there is no actual loss is in its infancy and has not been decided by this Court, despite its decision in *Binday,infra*.

The other rub is that beginning in 2008 as most other financial markets were crashing, these policies did cause losses to the investment groups who had paid the premiums but due to market forces could no longer sell them. No investor likes to lose money so when this happened as in the instant case, the investors despite a long run of financial success with these types of investments were outraged and ran to the feds.

3

So imagine if you will a 13 year old child behind the wheels of bright yellow Ferrari after Dad left the keys in the ignition and took Mom to the movies in the family car? That is analogous to what happened in the instant case. The assigned district judge never encountered a STOLI case. The previous defense attorney was MIA. That left a prosecutor who began his sentencing argument by lamenting his 3.4 years of seasoning. This was in juxtaposition to his virtually testifying about all of the pertinent facts and law on his way to demanding and receiving a three year prison sentence for the accused attorney who checked a few boxes falsely and created the false impression that the beneficiaries were purchasing such large policies as estate planning tools rather than as contingent assignors to the investment groups.

This appeal will thus be a fascinating adventure to delve into the frontier of intellectual and legal policy issues of STOLI cases and weigh in with answers to the previous unsettled questions.

Unfortunately, this appeal also has a very dark side, as it appears that the only post sentencing evidence admitted in this case establishes that the investors committed a fraud on the court by claiming they had

no prior knowledge of STOLI policies. They did so in a restitution proceeding two days prior to sentencing, motivated by the desire to falsely win the status as "Victims" and the award of $2,000,000.00 in restitution from Mr. Quatrella. In so doing the investors succeeded in their quest to have Mr. Quatrella be sentenced as harshly as possible. This worked. The Court after reading these letters thinking that it had another Bernie Madoff in its midst, teed off on Mr. Quatrella, and unfairly berated him and punished him at every turn.

Unfortunately, the Court may also have to sit as an arbiter of more than just intellectual issues-as the epidemic of prosecutorial misconduct again must be factored into our jurisprudence.

The prosecution of this appeal is a great honor and thrill for a California/Hawaii lawyer -guest who proudly calls the Ninth Circuit home and has staunchly defended this Circuit in legal journals while it is presently under siege.

Mahalo for your patience.

## STANDARD OF REVIEW

### A. Appellate waiver

A waiver of appeal is based on contractual law that is strictly interpreted against the Government and this Court has plenary power of review. *United States v. Ready*, 831 F.3d 551,555 (2nd Cir. 1996); United States v. Chen, 127 F.3d 286 (2nd Cir. 1997).

### B. Review of ineffective assistance of counsel claims on direct appeal

Although Circuit Courts rarely review competency of counsel issues on direct appeal, this Court will do so if the facts supporting such a finding including counsel's motivations for his/her strategy are in the record. When a Court does review the issue of competency of counsel, the standard of review is de novo. This Court examines the record independently, with no apparent deference to the district court's ineffective assistance analysis. See: *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003);e.g., *Hinton v. Alabama*, 134 S. Ct. 1081, 1087– 90 (2014); *Missouri v. Frye*, 132 S. Ct. 1399, 1408–10 (2012); *Strickland*, 466 U.S. at 698–700.

### C. USSG reviews

In a long series of decisions we have said that we review a district court's "interpretation and application of the [Sentencing] Guidelines de novo," *United States v. Santiago*, 384 F.3d 31, 33 (2d Cir.2004) ("Luis Santiago") (emphasis added).   We review a district court's factual findings as to loss amount for clear error and its legal conclusions de novo. *United States v. Uddin*, 551 F.3d 176, 180 (2d Cir.2009).

### D. Fraud on the Court/Governmental Misconduct

The Second Circuit Court of Appeals has narrow but ample Supervisory Power to determine and Order that the integrity or dignity of a Court under its jurisdiction has been compromised it can make all orders that do not directly violate the Executive Branch pursuant to the Separation of Powers Clause.  *La Buy, infra.*  However, the district court's findings regarding misconduct and sanctions are given great deference and the standard of review is abuse of discretion.

7

D. Review of Restitution Orders

We review an order of restitution for abuse of discretion. *United States v. Gushlak*, 728 F.3d 184, 190 (2d Cir. 2013).

## BRIEF STATEMENT OF THE CASE

On January 4, 2017 Attorney/Defendant David Quatrella (hereinafter Mr. Quatrella or Appellant) waived indictment and plead guilty to an Information charging one count of conspiracy to commit wire fraud in relation to fraud in arranging two life insurance policies, known by the acronym of STOLI. (R. 2, 1, 6).  This charge carried a maximum of five years imprisonment. As part of the plea agreement, the Appellant waived his right to appeal excepting for reason of incompetent counsel. (R. 6).

The Appellant was released on a personal surety bond. (R. 3,11).

The Presentence Report was filed on March 21, 2017. (R. 22).  The Defense filed its Sentencing memorandum on April 17, 2017. (R.23). The Prosecution filed its Sentencing memorandum on April 24, 2017).

The investors in the STOLI insurance policies seeking restitution filed a Motion to Intervene on May 11, 2017. (R.26). On May 23, 2017 (the day of the hearing on the Motion to Intervene) the investors filed letters in support of their motion. (R.32).

Two days later, on May 25, 2017, the Appellant was sentenced to three years in the custody of the Attorney General. (R. 39). The Court based its sentence almost entirely on the improper guideline calculation and the unchallenged letters that created a totally false impression two days before the sentencing and without review and input by the US Probation Department. (App. 79-83).

The Appellant was permitted to remain on bail and self-report on July 28, 2017. (R. 37).

On June 5, 2017 the Appellant retained the Undersigned who filed a timely Motion to Vacate the Sentence {hereinafter Rule 35 (a)Motion} alleging clear error in the proceedings. The Rule 35 (a) Motion is almost wholly predicated on the failings of counsel and an almost complete breakdown in the adversarial system. (R.42). The Government did not move to strike the Rule 35 (a) Motion as violative

of the appeal waiver and did not file its extensive briefing with a reservation of rights. (R. 64 ; passim).

On June 6, 2017, a timely Notice of Appeal was filed. (R. 46).

On June 20, 2017, the Court held a status conference on the Rule 35 (a) Motion proceeding and pending restitution claims (R. 57).

The Government responded, the Appellant replied and the Government filed a sur-replay. (R.64,68,69),

On July 6, 2017, the Appellant filed a Motion to Vacate the Report Date of July 28, 2017. (R. 72).

On July 13, 2017, the Court conducted a one hour oral argument. The Court denied the Rule 35 (a) Motion, the Motion to Vacate the Report Date and Ordered Restitution in the amount of $1,976,558.62 permitting the "Victims" to immediately pursue restitution which includes attachment of property and any and all civil remedies even reaching out to grab a share of Mr. Quatrella's meager prison commissary. (R.76,77).

Pursuant to the request by the Undersigned, the court stated all objections regarding the Restitution Order were preserved. (R.T. 7/13/17, p. 80).

On July 13, 2017, the Court denied the Appellant the right to bail pending appeal. (R.T. 7/13/17, p. 81). As of the filing of the AOB the decision on the Motion for Bail pending in this Court has not been rendered and Mr. Quatrella is in Lewisburg Camp serving his three year sentence. (R 2d. 44).

## BRIEF STATEMENT OF THE FACTS

Prior to the accusation of unlawfully participating in the life insurance investments which were the subject of the Appellant's plea, Mr. Quatrella was an attorney who enjoyed a blemish free life, great respect in the community, a longstanding loving marriage and two children attending Villanova University. (R. 42) Mr. Quatrella had provided abundant community service. (R.T. 5/25/17 pp. 19-29 ). Mr. Quatrella was not deemed a danger or a flight risk and honored every condition of bail during the proceedings. (R. 3,11,37). The prosecutor stated at sentencing, "We will not see Mr. Quatrella before a court again," meaning in context that this transgression was far beyond the

11

bounds of his good character, fine legal service and would not in the prosecutor's view be a repeat offender. (R.T. 5/25/17).

Essentially Mr. Quatrella failed to provide the insurance companies with the information that the policies were investment opportunities rather than the traditional life insurance policy in which the insured intends to pay the premiums as a family investment and financial comfort after his death. One example of the incriminating evidence was that the assisted with the Sherman application that did not check the boxes that the indicated that beneficiary might resell his policy. This assistance was only performed on one life insurance application. The Appellant in no way assisted with the preparation of the two other applications within the ambit of his relevant conduct.

However, Mr. Quatrella did <u>not</u> misrepresent the age or health of the insured's, nor did he misrepresent the financial status of the insureds, and the insurance companies suffered no actual loss as the premiums paid in were substantial and the insurance companies paid no death benefits. Two of the policies lapsed for non-payment of premium, one at the sole discretion of the investment group due only to market forces. The other lapsed due to the insured not providing the

12

premium invoice to the investors in a timely manner. (R. 6; R.T. 5/25/17, pp.26-34). Although the evidence was not contested, Mr. Quatrella on advice of counsel immediately threw away his fine reputation that he had earned in 62 years, his future livelihood as an attorney, forfeiture of his commissions, expressed remorse at every turn and waived almost every right in an attempt to make amends. (R. ). Mr. Quatrella instructed the Undersigned not to attempt to set aside the plea, merely attempt a humane sentence and reverse the district court's Restitution Order. (R.T. 5/25/17, pp. 23-36).

Although the Government's "intended loss" formula, which was not rooted in existing law in the Second Circuit or otherwise, the Court increased the Appellant's guideline range 20 points on the Government's original and esoteric untested theory of "intended loss," which translated to an increase in the low end of the guideline range from 0 to 70 months. (R. 24, p. 8; USSG Sentencing Chart level 7 is 0-6 months),

The Government conceded throughout the proceeding, as well as the US Probation Office that the investors were not victims The most disturbing allegation in the Rule 35 (a) Motion is that the investors in

13

these STOLI insurance policies committed a fraud on the Honorable district court by filing proof just two days before sentencing that they had no knowledge of STOLI policies and that in essence Mr. Quatrella committed Svengali-like treachery using his legal skills to take much of their life savings and drive them to the poor house. (R. 42 ).

However, the only evidence presented in the district court regarding the truthfulness of the late arriving sentencing letters was presented under penalty of perjury in the Rule 35 (a) Motion proceedings regarding these investor letters, established that many of the investors were in fact not STOLI virgins but this close nit investor group which had 13 years experience investing in life insurance policies. The investors were comprised mostly of two separate close families, whose members share shared other investments as a way of life (including an investment entity that is suing the Appellant's wife). (R. 42, Affidavit p. 7). The Government did not counter with any proof contraverting the evidence of the fraud on the district court. And neither did the investors who were well counseled up even though the Restitution Proceeding. (Passim).

## SUMMARY OF THE ARGUMENT

The almost complete breakdown in the adversarial process, glaringly observed in the record before this Court, and the deficiencies in following the important procedural rules and substantive law from the plea to sentencing rendering the judgment and commitment unlawful. Remand is required.

The waiver of the right to appeal is unlawful for six reasons based on solid precedent in this Circuit.

The indicia of Government misconduct although not alleged at this point, also makes this matter a potentially sad case that would be part of the "epidemic" (Judge Kozinski, *United States v. Olsen*, 704 F.3d 1172, 1177 (9th Cir. 2013)*(*Dissent En banc*)* that has caused federal courts in the last few decades to increasing use its Supervisory Power to issue sanctions which have included dismissal.

15

# ARGUMENT

## I

## THIS COURT MAY REVIEW ALL ISSUES RAISED ON APPEAL DESPITE THE WAIVER OF THE RIGHT TOAPPEAL

### A.   The waiver was not knowing and voluntary

Waivers of the right to appeal are not enforceable if they are not knowing and voluntary.  *United States v. Goodman*, 165 F. 3d  169,174 (2nd Cir. 2008).  In the instant case it is apparent from the record that previous counsel took the position throughout that an "intended loss" could not be used to increase the sentencing .  (R. 23).

Previous counsel agreed to what was in effect an open plea. (R. 6). In advising Mr. Quatrella that "intended loss" would not be considered and thus that would make the USSG calculation one in which probation would be the likely outcome, Mr. Quatrella in so relying could not have made a knowing and intelligent waiver of his right to appeal.  The substance of the ineffective assistance of counsel claims is fully explored in Point II.

16

Additionally, broad waivers in which the Court fails in its duty to explain the waiver are unlawful. *Ready, supra.* In the instant case, the district court merely stated the following to Mr. Quatrella at the plea colloquy:

Mr. Quatrella, I want to ask you about the provision on page 5, under waiver of right to appeal or collaterally attack conviction and sentence. Do you understand that a defendant ordinarily can appeal or collaterally attack his sentence?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that if the sentence in your case does not exceed 60 months of imprisonment, a 3-year term of supervised release, a $100 mandatory special assessment, a $250,000 fine, forfeiture of the $272,000, and restitution in the amount ordered by the Court, you are waiving your right to appeal or collaterally attack your sentence?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you discussed that provision with your attorney, sir?

THE DEFENDANT: Yes, Your Honor.

This lack of any meaningful discussion is a clear violation of Federal Rule Criminal Procedure 11 (B) (n), which in combination with previous counsel's position that the Appellant would not suffer any loss enhancement makes this appellate waiver unthinkable.

A.   An appellate waiver is a contract

It is settled law that an appellate waiver is based on contractual law and that the Government is considered to be the maker. As such, any ambiguous terms must be construed against the Government.  *United States v. Ready,supra*; *Chen, supra.*  The Government used the boiler plate language of "Collateral Attack" in reference to the appellate waiver.  However, "Collateral attack" in federal criminal parlance is a Habeas Petition  pursuant to *18 USC 2255.*

If the Government wanted to fairly negotiate this waiver of the right to appeal after Mr. Quatrella waived almost every other valuable right, the Government had the contractual obligation to include a motion to vacate sentencing and specifically a Rule 35 (a) Motion that

18

is not obscure but is an integral part of the Federal Rules of Criminal Procedure, one of few related to sentencing, not an arcane rule buried in a dusty case from English Common Law.

### B. Ineffective Assistance Claims can be raised on direct appeal

The Waiver of the right to appeal in the instant case specifically carved out the exception based on ineffective assistance of counsel. (R. 62). Although unusual and admittedly a high standard to overcome, claims of ineffective assistance of counsel can be reviewed on direct appeal, which has been emphasized in cases that were decided by this Circuit this year. *United States v. Ritter* (2nd Circuit 2017); *United States v. Parisi* 529 F.3d 138 (2nd Circuit 2017).

*Ritter,supa and Parisi, supra* and many cases like them find it more appropriate on their specific facts to handle these matters in a 2255 proceeding with the opportunity that evidentiary hearings bring to discern why an attorney did not chose or perform in a certain fashion. However, for reasons explained in Point II this is not the case herein.

Although Point II will examine the specific claims of ineffectiveness, the justifications for them as fashioned by the Government and the ruling by the Court, in broad brush, is that the Government feels that counsel for a criminal defendant is justified in using trial strategy that permits a fraud on the court to avoid a potentially a greater guideline sentence. Contra, See: *The Prosecutor 's Duty to Truth* Bennett L. Gershman Elisabeth Haub School of Law at Pace University. 14 Geo. J. Legal Ethics 309 (2001).

1)    All necessary facts are in the record

The instant case is so replete with ineffective decisions and actions that no explanation is required for this Court to make that determination. Additionally, the Government proffered the trial strategy in great detail that would be the best explanation previous counsel could ever justify.

The support of previous counsel's defense of  contributing to causing a misrepresentation was considered by the court and accepted as a justifiable strategy by defense counsel. ( App. 24-30 ). In fairness to the ethics of previous counsel, at least as to permitting the letters deemed to be false according to the only evidence admitted post

20

sentencing, it would not seem to be a premeditated ethical lapse because previous counsel most likely did not read the letters, discuss same with the Appellant and have much more than a moment to let these damaging letters pass him by. (R.T. 5/23/17, pp. 27-38).

Also, what is unique, and distinguishable from many cases deferring ineffective assistance of counsel claims to a 2255 proceeding years down the road is that the trial court <u>fully</u> considered the claims of ineffective assistance in hundreds of pages of pleadings and oral arguments. The Court thereafter made very specific findings about the claims and justification that the actions were an effective trial strategy that is reviewable herein without a scintilla of additional supplementation of this record. Thus, the direct appeal is as close to a 2255 record as this Court would ever have. The obvious advantages to Mr. Quatrella a single, timely resolution of all issues, expense and the obvious advantages of this Court is the great savings in judicial efficiency by not duplicating its efforts.

### C.   The Rule 35 A Motion is independently appealable

Although there is a scarcity of law, the best analogy to this process is the Motion for a New Trial as annotated in *Rule 33 of the Federal Rules of Criminal Procedure.*

Additionally, the Government fully litigated the Rule 35 (a) Motion through final argument. Accordingly, the Government has waived this argument and Mr. Quatrella should have robust appellate rights regarding the denial of the Rule 35 (a) Motion.

### D.   Questions of Great Public Importance

As discussed in Point III rejecting the appellate waiver also allows this Court to reach the question of "intended loss," an undecided and question of great public importance.  *Ready,supra.* In addition to that question of great public importance if this Court considers that there is structural error as alleged in Point V, it could clarify its holding related the degrees of  triviality of structural error which has some degree of tension with the US Supreme Court decisions.

# ARGUMENT

# II

PREVIOUS COUNSEL'S
INEFFECTIVENES ASSITANCE IS SO
CONTINUOUS, GROSS,
UNJUSTIABLE IN AND PREJUDICIAL
THAT THE MATTER MUST BE
 REMANDED FOR A NEW
 SENTENCING BEGINNING FROM
THE TIME THE PLEA WAS TAKEN

A.    Lack of understanding of the law of the main sentencing
      factor lead to a calamity of ineffective assistance

As previous counsel understood the law, a Defendant charged

with a STOLI life insurance fraud could only have his USSG increased

on the loss chart of 2B1.1 if the victims sustained an actual loss.  (R. 23,

p. ).  Since there were no actual losses in the instant case, it would

follow that the sentencing would be low risk and devoid of high conflict

as the offense level was only 6 before any losses were counted.  Even

adding some minor exposure to enhancements as the Defendant is an

attorney (2T1.1(b)(2) ) and the very mention of the term STOLI sounds

23

sophisticated (2B1.1(b)(10)(C) ), the Appellant was facing a sentence in the range of probation.

This grievous error by Appellant's prior counsel citing *Binday, supra* as the support that a 2B1.1 enhancement should not apply to Mr. Quatrella is revealing of his overall performance. It is clear from the position he took in his Sentencing Memorandum that he not only did not read the case with any care, he didn't read the advisory note which explicitly states that "intended loss" was indisputably a valid measure for this enhancement. His written position is as follows:

"Accordingly, as applied to this case, the government and defendant represented to the court at the time of the guilty plea that there is no calculable or actual loss. The government reserved the right to argue intended loss, but both the district court and court of appeals findings in the Binday case counsel against trying to calculate an <u>intended loss</u> because it is simply not "tethered in fact". Id, n. 38. Sent Memo (R.23).

However, *Binday,supra* made very clear that the use of "intended loss" in a guideline calculation must be applied.

"In challenging their sentences, defendants primarily argue that the district court used an erroneous loss amount in calculating their Guidelines ranges. "Loss for purposes of the fraud guideline [of the United States Sentencing Guidelines] . is defined as 'the greater of actual loss or intended loss.' " United States v. Certified Envtl. Servs., Inc., 753 F.3d 72, 103 (2d Cir.2014) (quoting U.S.S.G. § 2B1.1 cmt. 3(A)). Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense," U.S.S.G. § 2B1.1 cmt. 3(A)(i), whereas "

24

'[i]ntended loss' . means the pecuniary harm that was intended to result from the offense," id. § 2B1.1 cmt. 3(A)(ii)." *Binday, supra*

It is also a glaring deficiency in counsel's performance that he did not take the necessary care to learn that the panel in *Binday, supra* did not reach the issue of 'intended loss" because the trial court considered only the "actual loss" of the defendants because at $11,700.000.00 the trial court felt that it was not necessary to further enhance the defendants' sentences. Additionally, the trial chose not to be guided by the USSG. *Binday,supra*.

Given the benign set of circumstances due to previous counsel's lack of understanding of the law, the Appellant's waivers piled up without resistance. The Indictment was waived. There was no effort to negotiate any terms in the plea agreement, resulting in essence an open plea to the court. The right to appeal was waived. No motions were filed. No confrontation was undertaken when the investors poured it on. The sentencing strategy of previous counsel was the cotton candy of letters from good friends of Mr. Quatrella in the community and a short argument that refused to budge from the warm and fuzzy even as the walls were crumbling around him, including a devastating argument by the Government that all those friends of Mr. Quatrella

25

would be sitting with the investors if Mr. Quatrella had represented

them as he had represented the investors. (R.T. 5/25/17 pp. ).

However, not only was previous counsel wrong, it was fatal to any

chance Mr. Quatrella had to present his only honest and plausible

sentencing defenses. Additionally, this "sentencing strategy" in failing

to confront the investors caused a default of $1,908,769.00 to the

investors as they walked away with windfall Restitution Order that is

unlawful for participants under 18 USC 3663 (a).

> B.     Previous counsel's failure  to confront at the Restitution
>        Hearing on May 23, 2017 just two days before sentencing was
>        devastating.

Members of the investor group filed letters that collectively

painted the picture of the poorest Dicken's characters in terms of

poverty and education, taken to cleaners by a modern day Scrooge who

presented blank pages for them to sign themselves into a debtor's

prison.

The trial court asked if the parties were actually accepting these

statements. Previous counsel made not a peep. No request to continue,

or even a fling at cross-examination was attempted.  (;R.T. 5/23/17

pending transcript). The US Probation Office had no time to verify

these investor claims of victim status under 18 USC 3663 (a) as these letters were presented for the first time just two days before sentencing. ( App. 25-31).

After all normal criminal law procedures were waived or abandoned by prior counsel, causing a court to have little familiarity with the case, the trial court, had nothing but these missives to judge the character of Mr. Quatrella. The district court pounced. The district court's outrage would be especially natural towards a member of the bar who based on the uncontested letters took full advantage of his unsophisticated and unknowledgeable clients. The court stated exactly that:

> **Not only was the defendant in a position of trust, but it is clear that his clients trusted him. I refer you all to Document Number 32 at page 3 of 8, quoting, "Quatrella had been my trusted attorney;" page 4 of 8, "I had complete trust in his professionalism and integrity;" page 5 of 8, " we conducted every single legal transaction through Dave without ever thinking that he did not have our best interests at heart;" page 7 of 8, "I, along with other investors, trusted Dave that**

27

> **this was a good and honest investment."**
> **See also the letter from DS, "I trusted him.**
> **When I had a question about the law I went**
> **to him for answers."**

(US District Court Judge, Alvin M. Thompson, R.T. 1/25/17, p. 5).

As a result of the skewered guideline level next argued in Point III and the strong feelings of disgust expressed about the Defendant by the bench, Mr. Quatrella was sentenced to three years in prison-a dizzying proposition for a defendant whose counsel had taken the position that the worst case scenario was a 70 month less USSG level than found by the Court-one in the range of probation if there were no "Intended Loss" found after the testimony of experts and skilled briefing.

Also a dizzying proposition based on the Affidavit attached to the Rule 35 (a) Motion, evidence was introduced without objection by the Government. With over a month to review and rebut, various pleadings and proof filed by the Government, it never submitted proof that the rebutting the falsity of the investors' letters:

28

For example, Anthony Julian, related by blood to several investors had been involved in these life insurance investments since 2003, spending four months in California studying these investments with the creators and movers and shakers of these investment vehicles. (R. 43,App. 4348). Ray Rizio, former partner at Quatrella and Rizio, knew about these investments, invested in same and is the attorney for many of these investors, and a member of the investment group who convinced the Court that they were not participants, thus eligible for Restitution. ( R. 43,Affidavit). Dan Julian invested in the Adam's Company Pension and received a finder's fee for putting together a STOLI policy **in the instant case**. (R. 43,Affidavit, p. ). Donald Sherman, the beneficiary of the Sherman Policy at issue in this appeal was a "health freak," who was cautioned by the investors to stop exercising and to tank his physical which would make the policy more attractive to sell as his chances of living long would be decreased . (R. 42). If anything would clearly show that the investors were savvy in life insurance investments, that would certainly be a qualifier. Additionally, that also vaporizes the bloom of the rose of innocence that so clearly moved the judge to protect their interests.  One would think

the Government would be concerned enough to at least attempt to provide sworn counter-proof dispelling such a graphic notion.

The investors were some of the wealthiest folks in the Trumball, Connecticut area, one having arguably the largest home in the city, purchased from another member of the investment group. (R. 42). Another investor implied that the financial loss on the STOLI policy would deprive his children of a college education, without mentioning they had graduated many years before. (R. 42, p.; R. 43, p. ).

And yet previous counsel when confronted with these letters that the court heavily relied upon to sentence Mr. Quatrella to a substantial term of imprisonment, did not even request a short continuance to investigate claims like, "I never thought **for one instant** that this would be illegal or fraudulent. " (Letter submitted two days before sentencing by Michael Julian, par. 2) R.43, App. 5-8) And in the same letter self-righteously claiming that, "I cannot and will not knowingly deal with dishonest people." It would not take much digging to find that one of Michael Julian's partners in the Restitution Claim is a convicted felon. (R.42).

**None** of this can be chalked up to trial strategy. Almost everything in the record related to previous counsel's glaring deficiencies were the result of not making any attempt to be informed of the facts and law and not counseling Mr. Quatrella on the risk of an appellate waiver and his true posture at sentencing. Due to the overwhelming amount of cases that result in pleas of guilty, proper plea counseling has come to the forefront regarding ineffective assistance of counsel. *Missouri v Frey* 132 S.Ct. 1399 (2012); *Laffler v. Cooper,* 132 S.Ct. 1376 (2012).

Under a *Strickland* analysis, previous counsel's performance fell way below the performance expected of even a criminal lawyer in a state misdemeanor case, and the prejudice is apparent from: 1) the Court's pronouncement of disgust at Mr. Quatrella at sentencing, regarding the uninvestigated letters that would have been vibrant with impeachment; 2) the spread of the 70 months of the "Intended Loss" USSG increment based on no opposition to the Government's formula, which was adopted by US Probation and the Court; 3) a Restitution Order of $1,908,867.00 that is back breaking to the Appellant and his family, which Order the Court would have had to find as unlawful

31

given the absolute prohibition of "participants" claiming Restitution. *18 USC 3664 (a);* 4) and many others.

Thus, this Court must remand this matter to the district court for a new sentencing procedure as there were many failings in the record by previous counsel that prejudiced the outcome.

ARGUMENT

III

USSG 20 POINT ENHANCEMENT<br>INTENDED LOSS

This appeal looks not only meritorious but tantalizing because this Circuit will have a clean bite at the issue of a largely undecided formula in the Circuits for "Intended Loss" because *Bindy,supra* found that the formula used by the Government for intended loss was not at issue in the appeal.

In the instant case the Government consulted with the victim-insurance company, Lincoln Financial, and merely parroted back the insurance company's figures of its intended loss (there being no actual loss in the instant case). Neither the defense, the U.S. Probation Office

32

nor the Court questioned the admissibility or substance of, in effect, the testimony by the Government.

The Government created a formula never used or accepted by any court of law to crunch the numbers and arrive at the "Intended Loss." The Government consulted no experts, provided no rationale for its formula and certainly had no support in the Second Circuit, other case law or the USSG Advisory Notes to apply its formula. However, when discussing this at the oral argument related to the Rule 35 (A) Motion, the Government made the close enough "Horse shoe" argument and promptly shifted the burden the Appellant to come up with his own formula. Firstly, it is the Government's burden to establish a USSG enhancement and secondly the Undersigned did not want to make the same mistake as the Government by making up a formula with no factual basis. That was the whole point of the argument by the Appellant. What was required was real numbers, and experts to provide context in this complex area of the law.

Neither party, the US Probation Office nor the Court reviewed established case law in this Circuit regarding the general principles of loss in fraud cases. Had this occurred the trial court would at least

33

have been able to consider that this Circuit has mandated that the measure of loss is the harm in monetary terms to the victim, which must be established to support a USSG increase. *U.S. v. Byors*, 526 F3d 222,225 (2d Cir. 2009). That principle was based on the decision in *U.S. Robie*, 166 F3d 144,145 (2nd Cir.1999).

The Government's formula anchors the equation with the face value of the policies. The use of the face value of the policy to calculate loss has no basis in fact, logic or in the record in this case. Even if it had, the Seventh Circuit has found no nexus between the intended loss and the face value of the policy. *United States v. Jenkins*, 578 F. 3d 545-748 (7th cir. 2009). The same can be said of the Fifth Circuit. *United States v. Bazemore I*, 839 F.3d 379 (5th Cir. 2015).

Additionally, the district court did not make findings as to the basis or validity of the formula that was essentially 90% of the Appellant's Guideline computation.. Likewise, where findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue. *Rule 52, Federal Rules of Appellate Procedure.*

34

The US Probation Department's requirement to investigate and independently make neutral guideline assessments were violated.  In a round robin, the Government created its flawed formula, Probation adopted it, the Government in its memo agreed with US Probation and the Court had no choice given unanimity and as previous counsel did not even review and question the formula as he thought it would be rejected out of hand because he did not know that this Circuit must recognize "intended loss.".

Since the 20 point increase for the "Intended Loss" comprised 20 of the 27 USSG computation the matter was sentence determinative and thus this matter must be remanded for a new sentencing procedure as specifically requested and preserved in the Rule 35 (a) Motion.

V

THE RESTITUTION  ORDER IS
UNLAWFUL BOTH
PROCEDURALLY AND BECAUSE
THE INVESTORS ARE DISQUALIFIED
FROM BEING VICTIMS BECAUSE
THEY WERE PARTICIPANTS

35

."

The Government conceded throughout the proceedings, as well as formally to the US Probation Office, that the investors were not victims and that the investors' losses were due to the inability to sell the policies based on market forces  (passim ). In the Plea Colloquy the Government stated as follows:

> "**There also is an agreement concerning restitution.  I will note at this time, Your Honor, that it appears that there is no actual loss in this case, so restitution may not be applicable**.
> (R.T. 1/4/17, p. 23).

The Court confirmed that understanding at sentencing.

> **And I had a question as to whether, given the fact that the plea agreement did not contemplate restitution to the victims.**
> (R.T. 1/25/17, p. 5).

Despite the position throughout that the investors were not victims, the prosecutor argued for an Order providing the investors

36

with the immediate right to utilize Connecticut law to pursue the total amount of restitution award of approximating $1,908,867.00. {R.T. 7/13/17 p. 35; R.77,p. 3; 18 USC 3664 (m)}. Although the US Probation found that the Appellant had no assets to pay a fine, the Government argued Mr. Quatrella must have assets because he retained the Undersigned and the Undersigned had proposed that a STOLI expert be retained to assist the district court regarding the 'intended loss " formula in the pending proceeding. (R. 42; R.T. 7/13/17 p. 35). This hardly qualifies as proof that Mr. Quatrella has assets. It also exhibits little sensitivity regarding the Sixth Amendment Right to Counsel. The district court immediately accepted the Government's request, providing no analysis or reasons, stating only, "I have to get it done timely." (R.T. 7/13/17 p. 35). Ironically, the district court still had 40 days left on its 90-day restitution clock. (R.T. 7/13/17 p.). The hearing was not specifically set for a restitution hearing. (R.70). The Undersigned had suggested at the opening of the oral argument, and continuously prior to that, that the parties and the district court were all better off if while the court was on annual leave for one month that the parties could work together to bring clarity and transparency

37

regarding the facts and proper briefing of the law. (R.T. 7/13/17 pp. 1, 13, 15, 34 35).

The district court's Restitution Order is in direct conflict with 18 USC 3664 which requires the District Court to make written findings regarding a defendant's ability to pay restitution. In this case the court even failed to make oral pronouncements. "The district court must consider the defendant's financial resources, projected earnings and financial obligations. 18 USC 3664 (f) (2)(a-c)." In the instant case at the urging on behalf of the Appellant, the only fact known or considered by the district court regarding these 3664 (f) factors was that US Probation after its careful asset check, interview with Mrs. Quatrella and the home inspection concluded that the Appellant had no ability to pay a fine. (R.T. 7/13/17 p. 34).

The Circuit Courts that have considered these 3664 (f) failings have not only reversed but have deemed this "plain error." *U.S. v. Ahidley,* 486 F.3d 1184,1191-2 (10th Cir. 2007). See also: *U.S v. Ledge*, 553 F.3d 381 (9th Cir. 2008), certiorari denied 129 S.Ct. 2028 (2008); *United States v. Pandielo*, 184 F.3d 682 (7th Cir. 2002).

38

The appellant made sure that the objection to the Restitution Order was preserved in all regards. The district court agreed. (R.T. 7/13/17 p. 34).

Given that the district court did not even make an attempt to comply with the requirements of 18 USC 3664, and that the Government lead the district court to this plain error, it is hard for the Government in good faith to argue that this Restitution Order would not at the very least be quickly remanded following expedited briefing.

The Government must confess its error.

## IV

## FRAUD UPON THE COURT

The Appellant has no desire to write a harsh argument at this point that would be part of a public record and harm the reputation of the Government counsel. However, it cannot be denied that there is great concern and that position may change. Nothing intended herein implies that the Undersigned is in physical possession of any facts not previously disclose that directly implicates the Government in failing to

correct misstatements of the investors, however, the concerns ARE the following:

1. The Government took the position after its investigation, plea discussions and the proffers that the investors were not victims. That lends substantial weight to an argument that the Government is passively condoning the fraud on the Court if the investors were participants. (passim).

2. When the investors moved to intervene based on their claim that they were victims, the Government did not object. (R.T. 5/23/17, p. ).

3. The Government although taking the position throughout that the investors were not victims did not object when letters to the contrary surface two days before sentencing. (R.T. 5/23/17, pp. 31-46). Willful blindness does not suffice in any form in US federal law, especially given the high standards expected of a federal prosecutor. Please see. *Model Penal Code 2.02 (7)* regarding willful blindness by the prosecution.

4.   The Government did not file anything with the 'court in camera to let the court know the basis for its position that the investors were not victims based on its investigation, including proffer sessions, keeping the court in the dark. (Dck).

5.   When the Appellant provided sworn proof that the investors were lying about their participation, the Government made no attempt to rebut that proof. (R.T. 7/13/17, )

6.   When the Defendant/Appellant with new counsel argued that previous counsel was remiss in asking for a continuance to confront evidence that was misleading,  the Government took the position that confrontation in an attempt to show the investors were participants would be poor strategy since Mr. Quatrella could have ended up with a worse sentence if the investors were shown to be participants.  (R.T. 7/13/17 pp. 8-12).

7.   The Government took a robust posture on behalf of the investors and urged the court to make the entire restitution amount immediately due and collectible. This is hardly equitable for a prosecutor that assured the Appellant through letters and the office of US Probation that the investors were not victims. The Government was so rabid in its protection of the investors and in its desire to blacken the character of Mr. Quatrella

41

that in the first conference with the Court after the Undersigned filed the
Rule 35 (a) Motion, it blurted out Mr. Quatrella committed perjury in his
proffer session. (R.T. 6/20/17, 9-10). When the Undersigned objected in
writing regarding misconduct based on the improper testimony by the
prosecutor and a demand for the rough notes, the prosecutor thereafter
changed his story and claimed with no support in the record that the
perjury was not in the proffer, but in Mr. Quatrella's Affidavit. The
prosecutor in his Response to the Rule 35 (a) Motion, threatened Mr.
Quatrella that he would take care of him later, clearly implying her would
bring an indictment for perjury (Gov. Resp. 35 (A), p. footnote 2). These
unfounded attacks were successful as the district judge who stated at the
hearing on the Rule 35 (a) Motion that if he would grant same and vacate
the sentence, he would give Mr. Quatrella a lengthier sentence than the
original sentence based on "new information." ( R.T. 7/13/17, p. 32-36).
Although the district court's statement was cryptic as to this "new
information," it was likely that he was highly influenced by the
Government's testimony that Mr. Quatrella, not the investors, were lying
about their past investment experience and great wealth. Besides
committing blatant misconduct, this was a cravenly way to impeach the
Appellant's main defense as the prosecutor could have sought affidavits

from the investor's to rebut the Appellant's sworn testimony that the investors committed a fraud upon the court.

It is understood that if the investors proof was misleading but not false, this does not rise to a Due Process violation. However, the concern and invocation of this Court's Supervisory power to correct an error of Constitutional proportions and/or to maintain the integrity of the proceedings derives from the duty of the Government to prevent false testimony even when it does not know for sure, but should have known. Thus the Government herein is on unequivocal notice that the letters provided to the district court shortly before sentencing may well be false. *Mooney v Holohan*, 294 U.S. 103 (1935). The Government must fully investigate these facts and be candid with this Court if there were <u>even misleading statements</u> by the victims causing ire with the district court who stated reasons to increase the sentence in the proceeding below.

The Appellant would be remiss in failing to raise this concern as early as possible in this AOB and the draft brief filed as part of the Motion to Expedite Briefing, and reserves all rights.

43

## POINT V

## THE ABUNDANT ERRORS WERE STRUCTURAL AND DEMAND REMAND WITHOUT ANY CONSIDERATION OF PREJUDICE; AND MOST RESPECTFULLY THAT ON REMAND THIS MATTER BE REASSIGNED TO ANOTHER DISTRICT JUDGE

1.    The Structural Error

Besides the aforementioned errors of the lack of Confrontation, the failure of counsel to research the law, his deficient plea advice, his ineffective performance, the failure of the US Probation Department to investigate and report to the Court, the failure of the Court to make Restitution findings and the White Elephant in the Room of the prosecution turning a blind eye to a fraud on the Court, there was no support of any of the critical evidence that was considered in this case.

> One Question I'll have for you all is you
> are making factual assertions as to things
> and I just need to know are there anywhere
>
> you think I need to—<u>I don't have a sufficient</u>
>
> <u>basis, to accept a statement that is made by</u>
>
> <u>one side or the other</u>.

US District Court Judge, Alvin W. Thompson (R.T. 5/23/17, p. 21, lines 12-18 at the Intervenor's hearing two days before sentencing).

In response, previous counsel for the Appellant stated, "I think there is **no** dispute about who the investors are and the amount of the loss." (R.T. 5/23/17, p. 22, lines 6-8)

This is the same hearing in which the lethal letters were filed painting Mr. Quatrella in the most gross of terms, and just two days before the Court found that these letters were the defining characteristic of Mr. Quatrella. Any counsel in a structured federal district court case with the large swing of probation or a lengthy prison term would have studied the letters, and consulted with his client before letting them be accepted as truthful assertions.

The letters submitted at the intervenor's hearing in a federal criminal case were not admissible without foundation. Who knows if

the letters were even written in whole or part by those purported to condemn Mr. Quatrella?  The other foundational requirements of the *Federal Rules of Evidence 901* were not even attempted to be met.

This is consistent with almost every item of evidence introduced into these proceedings.  The Appellant reminds this Honorable Court about the Government's freewheeling use of the admission of the unchallenged "evidence" from Lincoln Financial about its formula and calculation of the insurance company loss that became incorporated into the Government's unsubstantiated "Intended Loss" theory. (Point III, pp. ).

In the evidentiary sense,  this proceeding became a free-for-all more consistent with small claims court than a felony criminal proceeding in a Federal District Court.

Structural errors in criminal cases have been recognized for the denial of the right to counsel, denial of a jury comprised of one's peers, lack of a public trial, the right to be present and. It is well known that this Court has some tension with the Structural Error Doctrine, and does not require automatic reversal for trivial errors. *Yarborough v. Keane*, 101 F.3d 894, 897 (2nd Cir. 1996).   However, the instant case

presents clear facts above triviality and one that was decided upon innuendo, supposition and the testimony of the prosecutor without any requirement of the application of the Federal Rules of Evidence. Therefore, not only does this appeal present a question of great public importance regarding the "intended loss" formula, but perhaps a second issue of great public importance when reviewed cumulatively of seeming Structural Error.

2.     Recusal

If this Court does Order Remand, it is also apparent that it must also instruct that the case be reassigned by the Chief Judge of the District of Connecticut to another district judge.

No disrespect is intended to the Honorable District Judge who presided over this matter. Respect for the District Judge was pronounced many times in the Rule 35 (a) Motion  as the Undersigned asserted that a court which is in the dark due to waivers and the conduct of counsel for the parties, cannot be expected to sleuth about and brief and argue on behalf of both sides. (R. 42, pp. ). Additionally at oral argument on the motion, the Undersigned merely asked at the Rule 35 (a) Motion hearing was time to investigate the alleged investor

47

fraud on the Court and to illuminate the court with expert testimony on how the insurance companies view STOLI policies (clearly nothing like he was advised the Government that STOLI policies are and always have been illegal per se which is belied by two experts <u>testifying for the insurance companies</u> in the *Binday, supra* trial).

The Undersigned did not even indirectly take the position that the district court was responsible for any errors. (R.T. 7/13/2017, pp. ). This made total sense because the district judge was backed up against his annual leave and the Undersigned merely suggested that he and the Government work in the court's absence for one month to normalize what a district court deserves and is accustomed to; the facts and law that would permit the court to make carefully informed and weighed decisions.

Nevertheless, with the normal and deserved confidence in general in the Government (See: *US v. Aquilar Noriega*, 831 F.Supp. 2d 1188 (CDCA 2013) (Judge Matz, presiding ), This district court below not surprisingly jolted into judicial denial and snapped roughly at the Appellant for attempting to challenge what was seemingly such a pat hand by the Government and the investors. As mentioned, the Court,

48

which previously berated Mr. Quatrella for taking despicable advantage of the purely innocent investors now threatened Mr. Quatrella that the court would render a much harsher sentence if he continued on with the Motion to Vacate the sentence and prevailed. (R.T. 7/13/17 p.  ).

Besides prejudging the outcome if there is a remand, the court has also made its mind up on that the Government's formula for "Intended Loss" and about the honesty of the investors.  The court had a hard time confronting the possibility that the Government and the investors had pulled the wool over its eyes and opted for speed rather than an opportunity to consider that something was badly amiss. "I have got to get this done." (R.T. 7/13/2017, pp. 32-38).

Additionally, taking a cue from the Government the Court seemed to rule that if the attorney for the Appellant permitted the investors to lie to the Court about their involvement that was near brilliant strategy to avoid a potentially higher guideline calculation. (R.T. 7/13/2017, pp32-38 ).  The Undersigned respectfully parried that a fraud on the court or permitting witnesses to perjure themselves could never be considered acceptable trial strategy. (R.T. 7/13/2017). (The

49

Undersigned takes being called "All Wet" in open court with a grain of salt and takes no offense (R. 7/13/2017,pp. 34-38).

Given that the Court's mind is made up, it expressed no interest in the STOLI issues, which are so stimulating and important for this Circuit, was extremely impatient, twice vented its wrath against Mr. Quatrella and did not seem to be particularly fond of the Undersigned, reassignment appears to be a prudent decision if remand is Ordered.

The law recognizes that recusal on remand when bias or prejudice of a federal judge is alleged and disqualification is sought. See 28 U.S.C. §§ 47, 144, 292, 455 (1970 & Supp. V 1975). These provisions are enforceable by means of 28 U.S.C. § 1651 (1970). A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. [Vol. 3 18 William Mitchell Law Review, Vol. 3, Iss. 1 [1977], Art. 5.

Appellate courts have also used its Supervisory Power when bias against a party is clear and there have been denials of Constitutional rights as a result. *Reserve Mining Co. v. Lord*, 529 F.2d 181, 188 (8th Cir. 1976). The courts of appeals derive their jurisdictional power from Title 28 of the United States Code. Specifically, Section 1291 confers

upon the courts of appeals jurisdiction over all appeals from final decisions of district courts. Section 1292 expands upon this grant by permitting jurisdiction to entertain appeals from certain types of interlocutory orders entered by district courts. Congress has also provided the courts of appeals with a statutory enforcement vehicle in the form of the All Writs Act. This Act confers upon all federal courts the authority to issue "all writs necessary or appropriate in aid of their respective jurisdictions." In a case where the appellate court rules that the district court abdicated its role as a decision maker, The Supreme Court in a 1957 case, *La Buy v. Howes Leather Co.*, 352 US 247 (1957). "We believe that supervisory control of the district courts by the courts of appeals is necessary to proper judicial administration in the federal system. The language used in *La Buy,supra* is similar to an earlier statement in *McNabb v. United States* in which the Court made reference to "the exercise of its supervisory authority over the administration of criminal justice in the federal courts." *La Buy, supra.* This authority to establish and maintain standards of procedure and evidence was found to exist implicitly within the court's role as judicial supervisor of the administration of criminal justice in federal courts.

51

Accordingly, a resentencing ab initio must be granted due to structural error and the Remand Order must include an instruction that the Chief Judge in the District of Connecticut reassign this matter.

## CONCLUSION/AND PRAYER FOR RELIEF

The waiver of the right to appeal was unlawful.

The issues raised are meritorious and will require a remand for a new sentencing procedure.

The Honorable District Court became mired in the muddled presentation of the defense and highly suspect presentation of the Government. Unfortunately this otherwise fine jurist must step aside to avoid the stated bias and obvious appearance of bias against Mr. Quatrella and a certain skepticism of the Undersigned for taking a strong stance in the Rule 35 (a) Motion to Vacate the Sentence,

between the filing of the AOB and oral argument, this Court may

find itself deliberating on a Motion for Sanctions against the

Government pursuant to its Supervisory Powers.

Respectfully Submitted,


_____/SS/_____

Richard A. Hamar, Esq
CA Bar 47952
Fed District number **phv09048**
Author of this motion
Attorney for David Quatrella
In Pro Hac Vice status
Retained Counsel for Defendant
David Quatrella
8/28/2017

CERTIFICATE OF SERVICE


I hereby certify that on the 28 day of August, 2017, I have electronically
filed the foregoing with the Clerk of Court using the CM/ECF system,


_____/SS/_____
Richard A. Hamar
Federal Bar Number **phv09048**


.